Case No. 21300 St. Lukes Hospital et al. v. ProMedica Health Systems Inc. et al. Argument not to exceed 15 minutes per side. Mr. Litvak, you may proceed for the appellants. Good morning, Your Honors. Good morning. May it please the Court, Doug Litvak for ProMedica, I'm joined by Chris Renner and Mark Wagner. I'd like to reserve three minutes for rebuttal. Justice Scalia's decision in Trinco held that a business has no duty to help a competitor absent extraordinary and rare circumstances that are not present here. In concluding otherwise, the District Court made two fundamental legal errors that are independently dispositive. First, the District Court misapplied the legal standard for analyzing a refusal to deal claim under Trinco, letting the Aspen exception swallow the general rule to no duty to deal. It ignored that under Trinco and the Tenth Circuit's decision in Christie Sports that a refusal to deal pursuant to an agreed upon termination right cannot violate the antitrust laws as a matter of law. Well, let's say you're right that the Aspen refusal to deal exception is narrow and rare, but it's also rare to reverse a District Court in a preliminary injunction setting. That's why we call it abusive discretion. So what do we do with that? So here, Your Honor, there are legal errors that the District Court made that this Court should review de novo. And those legal errors are the misapplication of the legal standard for analyzing refusals to deal claim. And other courts, like Trinco and Christie Sports, have dismissed cases on the pleadings based on applying the correct legal standard. So this is a legal question before you. And the plaintiffs conceded that in their letter to the Court in response to our supplemental authority about the Facebook case, they acknowledged that the Facebook Court applied a different legal standard that they disagreed with, and that's the legal standard that we're saying is the correct legal standard to analyze the refusal to deal claim, and the District Court didn't apply that standard. And the Court should review that de novo. One error, the failure to accept Parmedico's business justification? Correct. The legal error is that the District Court never analyzed the business justifications as part of the refusal to deal analysis, and was required to do so under Trinco and- What's the best case for the business justification for potentially turning customers away from the hospital? It's profit-maximizing behavior. It promotes the efficiencies of our narrow network. So the Paramount Health Plan has a narrow network strategy, where its sole purpose is to create efficiencies by sending patients in the Paramount Plan to Parmedico hospitals. And to the extent that Paramount patients go to other hospitals, that adds cost and upward pricing pressure on the Paramount narrow network product. And so the efficiency is that, like, the more Parmedico can use Paramount to get low insurance and drive more volume to their Parmedico providers, then it can continue to offer low-cost insurance at the same time, maximizing its hospitals. On that basis, I thought the reason that Parmedico wanted St. Luke's in the first place is that there were general services that Parmedico offered that St. Luke's really didn't. And so St. Luke's had some specialty practices they were strong in, but other customers were going to go to Parmedico for a lot of other services. And is the theory that by cutting, by St. Luke's being acquired by McLaren, that those customers would then go to a McLaren facility for their broader medical needs? That's correct, Your Honor. McLaren, St. Luke's is a very different competitor than St. Luke's was. And McLaren-St. Luke's will now offer comprehensive services. For example, McLaren-St. Luke's, St. Luke's didn't offer cancer services. McLaren-St. Luke's just made plans to start having cancer services about one mile from St. Luke's campus where Parmedico's cancer services. Does McLaren have any other facilities in Lucas County? At the moment, the only facility is McLaren-St. Luke's. So we wouldn't consider customers leaving Lucas County to go to southeast Michigan to get their services through a different McLaren facility, right? For tertiary care, yes, but not for general acute care. So let's say you're right about all of this. How do you want this resolved? I mean, does it end if the PI is vacated? Does that make everybody happy on your side of the case? I mean, I'm trying to figure out what the point of the bond part of the appeal is. Does that really matter anymore?  But is that the end of the case if you're right? If we're right, it should be the end of the case. The bond is meant to be in place. We've been harmed for a year. That's kind of why I'm asking. Are you seeking money damages? Or what's the point of the bond if you're not seeking money damages? Or for the PI being put in place? The bond is in place for recovering damages for the harm that has occurred. Throughout the course of the last year. Maybe I'm missing something. One of us has got something wrong here. You wanted there to be a bond in place, right? And Judge Zuhara denied that request. He didn't even address that request. He didn't consider it. So what's the remedy at this point? I'm trying to figure out whether that matters anymore. It doesn't. If you vacate the injunction, the bond doesn't matter. The second fundamental legal mistake the district court made was it didn't assess whether the refusal to deal harmed competition in a way that could create an antitrust injury as required by NICSAN. What's the difference between the Aspen predatory conduct plus, so refusal to deal plus predatory conduct, and the antitrust injury under INDEC and NICSAN? Is there any similarity? Is there any space there? Is it the same inquiry? There's some space there because the refusal to deal cases typically involve situations where there's substantial foreclosure or absolute foreclosure from the withheld input. And so, for example, in Otter Tail, a case relied on by the plaintiffs, the essential facility is, without it, the other competitors can't compete without access to the essential facility. But here we have the unique scenario where it's not clear that we, Paramount, are an essential facility that could substantially foreclose the plaintiffs through a refusal to deal and prevent them from competing in the provider market. Would you take a moment to address the Section 1 claim and this change of control provision being anti-competitive? So the Section 1 claim is an attempt by the plaintiffs to plead around the hard road to liability that refusal to deal claims present. Novell and Qualcomm have both analyzed Section 2 conduct-specific claims under Section 1 with the same test. And this court did something similar in the Trina Solar case when it was analyzing predatory pricing claims under Section 1. And this court said the same test applies. And so the Section 1 claim is just a way to try to circumvent the hard road to liability that refusal to deal presents. With respect to the change of control provision, I think your friends on the other side say that that was basically forced upon them at the time of the divestiture. They really had no choice but to agree to it. That's implausible on its base because the FTC reviewed it and approved it. Did they approve that specific line? How detailed is the FTC's review? The FTC's review is pretty detailed in these divestiture cases. Is that in this record? It is through the declarations. The Kruger Declaration speaks to how extensive the FTC... I can see them blessing the agreement at a high level, blessing that specific provision. I don't know if there's evidence that goes that deep. So the FTC three times, so the ALJ and then the Commission both were asked by the Complaint Council to require as part of the remedy in the FTC merger case a duty to deal with the district court order here. And they rejected it twice. The ALJ rejects it. The Commission then rejects it, citing Trinco. And then the FTC staff, in doing the divestiture agreement, permits this change of control provision because the assistance to St. Luke's was meant to be temporary and on the condition that they're not bought by another system, at which point the assistance wouldn't be needed. So it was a calculated decision by the FTC. Can I ask you another question about the narrow network argument that you made? I think before the transaction in 2010 or whenever it was with St. Luke's, well care was added to the Paramount network. Is that consistent with your narrow network argument or is it inconsistent in the sense that those doctors could also send patients to St. Luke's where they were doing business? So it is consistent with our narrow network theory. So the physician services, the narrow network has to fill all the gaps in coverage. And for physicians, you need to make sure you have adequate coverage for the network. And so the narrow networks typically have more independent physicians than hospitals that are not integrated with the health plan. And so the physicians then can refer patients to whoever's in the narrow network. And so if well care is in the network and McLaren St. Luke's is in the network, you would be then losing patients. Paramedic would be losing patients to McLaren St. Luke's, which would be a, you know, defeat the purpose of the efficiencies from the narrow network strategy. When they've been losing patients in the front end, those doctors would still have been sending people to St. Luke's in 2009 like they might in 2021. What's the difference? Because St. Luke's is a very different competitor than McLaren St. Luke's. That's the difference. So paramedic in its narrow network contracting strategy has decided that it will let in its narrow network a community hospital, UTMC is in their narrow network, St. Luke's was in their narrow network for a period of time, but has never let a system like McLaren, you know, health system that has its own health plan. It's a different competitor because McLaren is going to build out St. Luke's to be this larger health care entity that's not currently. That's one of the points I was getting at earlier. I mean, McLaren's footprint right now is pretty narrow in Lucas County. It's big in Southeast Michigan, but I don't think we look at that market. So this is all in future plans that McLaren has to build out their network in Lucas County. And at that point, it will be more of a competitor than it is today. No, Your Honor, that's not correct because McLaren St. Luke's has billions of dollars in revenue to fund. The parent has billions of dollars of revenue to fund St. Luke's, has paid off its debt, is going to invest substantially in its services, is doing so already, and also has brought the McLaren health plan down to Lucas County. So now McLaren St. Luke's is now just like ProMedica in that it's vertically integrated too. And I'm not aware of a refusal to deal case where the plaintiff also has its own access to the input. Tell me what I'm missing here in terms of why the preliminary injunction hurts you. If you really like narrow networks, what is it that prevents Paramount this fall from saying, well, we've got the narrow network that includes St. Luke's, and we've got a really narrow network that does not include St. Luke's. And then you price that out so everyone wants it and doesn't go to St. Luke's. You end up in the same place. Why isn't that the answer to this? In other words, you're not really hurt by what happened. Because we'd be right back here in front of you. The plaintiffs would, again, say that we're just trying to circumvent the order in that event. Well, I can ask the other side, but it seems to me you'd still be keeping St. Luke's. You wouldn't be invoking that provision. St. Luke's would still be available under a plan. It's not unusual to have more than one plan. And there would be a plan that didn't involve St. Luke's and presumably would be cheaper still because it's an even narrower network. Sure. I think that's hypothetically possible, but that's just not what the law requires. The law doesn't require us to change our narrow network strategy to create a new plan that I'll have extra costs. The law doesn't require companies to litigate everything. Why not just do that and just solve the problem? The case is broader, too, than this one issue. The plaintiffs allege that this is all part of a larger scheme. There's also another claim that's been added that relates to the cancer center and restrictive covenants. So that won't dispose of the case. Okay. Let me make sure there's not any other questions. Okay. Thank you. Thank you. We'll hear from the other side. Mr. Ettinger? Yes. Good morning, Your Honor. Good morning. So let me plunge in on the refusal to deal and you probably won't be surprised to hear me say that the business justification is a pretext on the facts. There was certainly substantial evidence to support the district court on that. Did the district court address business justification? I think you're correct. The district court rejected the claim that this... The district court said this was a previously profitable arrangement and effectively reached that conclusion. In any event, the evidence supports the district court's conclusion. The business justification, which was not briefed or argued in great detail before the district court, is completely rebutted by what Your Honor talked about, and that is the WellCare termination. WellCare was in that network a long time. The evidence showed that lots of doctors were in that network. Nevertheless, they were terminated on the very same day, as was McLaren Health Plan. There's no justification for that, no reason. The refusal to deal claims, I think we all agree, are pretty tough to bring. I mean, essentially quoting, paraphrasing Trinko. And, you know, this case to me, the analogy to the one case where it worked, Aspen, or at least the one case in the last 50 years, is as if Aspen Highlands was bought by a large national conglomerate. You wouldn't have said that the large Aspen company would have to continue to deal with the Little David because it was no longer a Little David anymore. They would have just been purchased by a larger entity. That seems to me the analogy to this case. Your Honor, I think it's that because of a number of things. One is the WellCare termination, which they didn't have to do. And the only justification we heard from the solution No, no, no. What does that have to do with the point that St. Luke's has been bought by a very big company? They've merged with a very big company. You wouldn't have thought of Aspen Highlands as a victim if they had merged with a very large ski company. Your Honor, I don't know if that's right. I mean, the issue is what power does St. Luke's have? What position does it have in this market? The acquisition by McLaren didn't make St. Luke's the equivalent of the McLaren system. It provided an opportunity for St. Luke's to compete more effectively and challenge ProMedica's market power. That's why we're here. It's very strange to have a refusal to deal claim with someone who is just as big as you are. Well, they're not just as big in the relevant market. They're much smaller, Your Honor, and that's the relevant question. Just as well capitalized? Just as well capitalized, but that's not, you know, the only question and far from the leading question in an industry. Do you really think Aspen would have come out the same way if Aspen Highlands had been bought by an equivalent-sized ski company? I think, yes, Your Honor, under these facts, under Aspen's facts, where this was a popular venture, there was an evidence that it was profitable. The evidence today, the evidence before this Court, that McLaren buying St. Luke's suddenly made the Paramount relationship unprofitable is based on nothing more than a couple of vague statements and declarations contradicting the pattern of behavior. Is there a PI case in an antitrust Section 2 where money damages are all that's at issue and you get a PI? I mean, I've never seen something like this. Irreparable injury doesn't arise when all you're worried about is money. Right? Aspen was not that. Aspen was after a jury trial. How in the world would you have a PI here where, if you're right, that you have a successful Section 2 claim, if you're right that you were going to be monetarily damaged, that's not irreparable injury. That's all, give me the money in three years. Why would you have a PI in this setting? It makes no sense to me. Your Honor, where the loss of the money is included in loss of patience, loss of market position, loss of goodwill, as we've explained. All compensable. I don't think that's hard to find an economist to compensate for all of that. The economist will set up models and the defendants will claim the models don't account for all that, Your Honor, but I think we've stated a bunch of cases. And then you go to Aspen, you look at the Aspen case,  and you get your money. That's how it works. I just, I don't understand a PI in this setting. It doesn't make any sense to me. Your Honor, I mean, we've laid out the arguments, and I guess all that I would add beyond those is that because of St. Luke's vulnerability, because of the effect that it will have long term on its market position, that, you know, it's not simply something that money damages ultimately will recompense. But the vulnerability was solved by having the deep pockets of McLaren. Your Honor, that's not what the record shows. The record shows that McLaren is putting in money, but McLaren is a system with a lot of hospitals and it's not like they are an unlimited ATM for any given hospital. ProMedica seems to think there's a lot of viability in St. Luke's. They acquired it at one point. And now McLaren has done the same thing. I think Chief Judge Sutton has a fair point about being able to consider the resources and financial backing. And I think aren't there already announced plans to add a cancer center and do other things to enhance McLaren's footprint in the county? Well, there certainly are, Your Honor, and that's, we think, why we're here. But that doesn't mean that St. Luke's is invulnerable by any means. And we've explained why and the undisputed evidence explains why this will set St. Luke's back several years in terms of making competitive investments. Are there any cases where a court's found an antitrust violation where a party's basically just acting upon a contractual right that agreed to with the other side, which seems to be what's happening here? There are lots of cases. There are lots of cases where  and the defendant are, you know, often involved under a contract. I mean, Section 1, by its nature, prohibits agreements and restraint of trade and many of those are written agreements. So I don't think the contract... Your Section 1 claim, who's the agreement to violate the antitrust laws between the plaintiff and the defendant? That happens. There are a number of cases, Your Honor, and I can cite them where tying arrangements are, what happens is the plaintiff refuses to go along and continue buying the tied product. The tying product is cut off and that's provided a basis for relief for the plaintiff in that situation. And this is similar. We had a conditional refusal to deal, in effect, under the change in control provision. I said, if you go ahead and be acquired, then we can cut you off. They did and St. Luke's did and ProMedica did. And that provides a basis for the Section 1 claim and the conditional refusal to deal there is really somewhat different than the situation under Section 2. Why won't competition work here? In other words, let's say they're allowed to terminate. McLaren has an insurance arm. Why can't it offer insurance plans to the people that have used St. Luke's at a lower rate than Paramount offers? You know who these folks are. Why doesn't that work here? Does the St. Luke's doctors keep all the work? Heck, maybe it grows if they have an effective advertisement. There are several reasons. One is, it takes a long time to get a new managed care plan up and running and successful. It takes years. It's very difficult to get a broad enough network. Secondly, perhaps most importantly, that network is never going to include ProMedica or ProMedica's doctors. And as the lengthy FTC record shows, ProMedica is not a good provider. So, I think the concern was making sure the St. Luke's doctors could continue to provide care to folks. And without Paramount, the idea was that they wouldn't be providing that care anymore. And I'm making the point, why can't the McLaren insurance arm offer a better option for people who are struggling to  the care that they need. So, I think that the McLaren insurance arm is not going to be successful in providing the care that they need. So, I think the McLaren   is not going to   in providing the care that they need. So, I think the McLaren insurance arm not going to be   providing  to provide the care that they     the McLaren insurance arm is not going to provide the care